IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIETTA MILLER-JONES                   :

                                        :

   v.                                   :   Civil Action No. DKC 14-3517

                                        :

PRINCE GEORGE'S COMMUNITY
   COLLEGE                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion for summary judgment filed by Defendant Prince George's Community College ("Defendant"). (ECF No. 23). Also pending is a motion for leave to file a surreply filed by Plaintiff Marietta Miller-Jones. (ECF No. 28). The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted.

**I. Background**

   **A. Factual Background**

Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff. Plaintiff, an African-American woman, began working for Defendant in 2001. In May 2010, she was promoted to a program assistant position at the Human Services Institute ("HSI") within the Workforce Development and Continuing

Education Department ("WDCE").  (ECF No. 26, at 9).  According to the job description, the program assistant position "assists the coordinator in managing the programs and assumes the responsibilities of the coordinator in his/her absence." (ECF No. 23-14, at 2).  In November 2010, Plaintiff's position was reclassified as an office associate, but the duties remained largely the same.  (ECF Nos. 23-1, at 11; 23-15 (noting the duties are to "[a]ssist with overall program functions and supervisory tasks" and to "[p]rovide direction and leadership in absence of program director.")).  During her time as a program assistant and office associate, Plaintiff's supervisor, Ashante Abubakar, was pulled away for other tasks, leaving Plaintiff to assume many of his responsibilities.  (*See* ECF No. 23-4, at 14).

On January 20, 2011, Defendant posted a vacancy announcement for the HSI program director position, which was open to internal candidates only (the "first recruitment"). (ECF No. 26-11).[1]  Plaintiff applied for the vacancy and was selected for an interview along with three other candidates. (ECF Nos. 23-1, at 13-14; 26, at 10-11).  Following the interviews, the screening committee recommended two applicants

---

[1] The parties appear to agree that any claim that may have arisen from the first recruitment is time-barred because Plaintiff did not file an administrative complaint within 300 days. (ECF Nos. 23-1, at 13 n.5; 26, at 28 n.4); *see Williams v. Giant Food Inc.*, 370 F.3d 423, 428-29 (4th Cir. 2004).  The details surrounding the first recruitment, however, are relevant background.

for hire: Plaintiff and Nancy Park, a Caucasian woman. (ECF Nos. 23-1, at 14; 26, at 11). Plaintiff was re-interviewed and was recommended for the position. Plaintiff received multiple congratulatory wishes despite the fact that the position was not yet officially offered to her. (*See* ECF No. 26, at 12). Ultimately, Plaintiff was not offered the job. Defendant's chief of staff and affirmative action officer, Alonia Sharps, an African-American woman, and Defendant's interim vice president, Joseph Martinelli, a Caucasian man, determined that the first recruitment was flawed and that Plaintiff did not have the desired supervisory experience for the position. (ECF Nos. 23-1, at 15; 26, at 13).[2] Mr. Martinelli informed Plaintiff that she was not selected because he "wanted a wider pool of applicants and [he] would prefer to readvertise" the position. (ECF No. 26-4, at 19). Plaintiff was formally informed that she was not selected for the position and that it was being readvertised on March 28, 2011. (ECF No. 23-23, at 2).

Defendant posted the HSI program director vacancy again in April 2011 (the "second recruitment"). (ECF No. 23-1, at 17). Plaintiff did not apply for this vacancy because she was recently promoted to a program coordinator position. Interviews

---

[2] The parties dispute the exact roles of Ms. Sharps and Mr. Martinelli in the recruitment process. The record indicates that both were involved in the process, and such a dispute is immaterial for the relevant questions at hand.

were conducted for the second recruitment in December 2011, but no applicant was selected. (*Id.*).

On January 27, 2012, Defendant advertised the HSI program director position for a third time (the "third recruitment"). (ECF No. 23-27). Plaintiff was once again selected for an interview along with three other applicants, and the selection committee recommended Plaintiff for the position in June 2012. (ECF Nos. 23-1, at 17; 26, at 14). At some point in 2012, the new WDCE dean, Dr. Yvette Snowden, an African-American woman, decided to expand HSI into the *Health* and Human Services Institute ("HHSI"), and thus reclassify the program director position. (ECF No. 23-1, at 18). Mr. Martinelli stated that he and Dr. Snowden discussed the reclassification, in part to "attract additional expertise to work on both [health and human services] areas." (ECF No. 26-4, at 32). According to Dr. Snowden, the desire to create HHSI was due to the "expansion of the healthcare industry," the expected opening of a large medical facility in the area, and the needs of the department. (ECF No. 23-5, at 17). On July 30, Dr. Snowden informed human resources that she wished to "re-advertise[] the position of Program Director Human Services Institute in order to update the position description based on changing requirements within our division." (ECF No. 23-5, at 43). On August 15, Plaintiff was informed that "the Division has decided not to fill the position

4

at this time," and she received formal notification on September 4. (ECF Nos. 23-32; 23-33).

On September 12, Dr. Snowden initiated the process of creating the job posting for the new HHSI program director position. (ECF No. 23-5, at 51). The HHSI position, along with various other announcements, was never posted due to budget cuts. (ECF Nos. 23-1, at 20; 23-5, at 57-58). Since 2012, neither the HSI nor the HHSI program director position has been advertised, and no one has been hired for either position. (ECF No. 23-1, at 20). The parties dispute whether the program director position has been eliminated or merely remains vacant. (*Compare* ECF Nos. 23-10 ¶ 10, *and* 23-45, *with* ECF No. 28-3).[3] Plaintiff remains employed by Defendant.

B.  **Procedural History**

On April 5, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 23-16). The EEOC issued a right-to-sue

---

[3] Plaintiff seeks leave to file a surreply, which contains a copy of a recent organizational chart showing the HSI program director position as "vacant." (ECF No. 28). Local Rule 105.2(a) states that, "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Surreplies are generally disfavored. *Chambers v. King Buick GMC, LLC*, 43 F.Supp.3d 575, 624 (D.Md. 2014) (citing *Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013)). Plaintiff avers that she received the organizational chart in a meeting in February 2016, after she filed her response. (ECF No. 28-2 ¶ 3). Accordingly, Plaintiff's motion for leave to file a surreply will be granted, and the court will consider the organizational chart to the extent that it is relevant.

letter on July 8, 2014, which Plaintiff received August 14. (ECF No. 23-50). On November 7, Plaintiff filed a complaint to commence the action in this court. (ECF No. 1). The one-count complaint alleges that Defendant discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e, *et seq.* when it failed to promote her to the program director position. Following discovery, Defendant filed the pending motion for summary judgment on December 31, 2015. (ECF No. 23). Plaintiff responded (ECF No. 26), and Defendant replied (ECF No. 27). On March 18, 2016, Plaintiff filed the pending motion for leave to file a surreply (ECF No. 28), and Defendant responded (ECF NO. 29).

**II.  Standard of Review**

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2525 (2013). To survive a motion for summary judgment, a plaintiff must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct evidence that discrimination motivated the employer's adverse employment decision; or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Here, Plaintiff must rely on the *McDonnell Douglas* framework because she offers no direct evidence of discrimination.

Under the *McDonnell Douglas* framework, once the plaintiff meets her initial burden of establishing a *prima facie* case for discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by

a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

### A.  *Prima Facie* Case

To establish a *prima facie* case of discrimination in a non-selection case, a plaintiff must prove that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position for which she applied; and (4) she was rejected from the position under circumstances giving rise to an inference of unlawful discrimination. *See Westmoreland v. Prince George's Cty., Md.*, 876 F.Supp.2d 594, 604 (D.Md. 2012) (citing *Hill*, 354 F.3d at 285).

Defendant argues that Plaintiff cannot establish a *prima facie* case because no one outside of Plaintiff's protected class was hired for the program director position. (ECF No. 23-1, at 25-26).  Defendant's argument overstates relevant case law.  The "general rule" within the United States Court of Appeals for the

Fourth Circuit is that a plaintiff must show that the position was filled by a similarly qualified applicant outside the protected class to satisfy the fourth element of a *prima facie* case. *See Miles v. Dell, Inc.*, 429 F.3d 480, 485-87 (4th Cir. 2005); *see also Westmoreland*, 876 F.Supp.2d at 606. There are, however, exceptions to this rule, including cases where: "(1) an age discrimination plaintiff is replaced by a much younger person within the same class, (2) a significant lapse of time occurs between the adverse employment action and the decision to hire another person, and (3) the employer's hiring of another person within the protected class is calculated to disguise the act of discrimination." *Miles*, 429 F.3d at 486 (citing *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998)). Moreover, a plaintiff may satisfy the fourth prong by showing that the position in question remained open and was unfilled. *See, e.g., id.*, at 485 (citing *Hill*, 354 F.3d at 285); *Westmoreland*, 876 F.Supp.2d at 606. Accordingly, Plaintiff is not required to show that the position was filled by someone outside of her protected class.

Possibly recognizing the contours of the fourth element, Defendant also asserts that Plaintiff's *prima facie* case must fail because the vacancy announcement was cancelled and the HSI program director position was eliminated. (ECF Nos. 23-1, at 26; 27, at 9). Viewing the facts in the light most favorable to

Plaintiff, however, it is not clear that the position was eliminated. Although Dr. Snowden attempted to rework the HSI program director position into a combined HSSI position, the HSSI position was never created. Moreover, there is conflicting evidence as to whether Defendant actually eliminated the HSI program director position or merely considers it to be "vacant." (*See* ECF No. 28-3). The third recruitment effort may have been cancelled, but a reasonable juror "could still conclude that 'the position remained open.'" *Westmoreland*, 876 F.Supp.2d at 607 (quoting *Hill*, 354 F.3d at 285). Defendant's reliance on *Agelli v. Sebelius*, No. DKC-13-497, 2014 WL 347630 (D.Md. Jan. 30, 2014) is unpersuasive. In *Agelli*, the defendant National Institutes of Health cancelled a vacancy announcement because the program lost its full-time equivalent position; the position itself was undisputedly eliminated. *Id.* at *1. The vacancy was cancelled before any applicant was interviewed or before the applicant pool was narrowed in any way. *Id.* The court held that in such a situation, "when a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her *prima facie* case because she cannot satisfy the fourth prong of the analysis." *Id.* at *5 (citations and internal quotation marks omitted). Here, on the other hand, the timing of Defendant's decision regarding HSSI, Defendant's handling of the

first recruitment, and the dispute regarding the status of the HSI program director position support Plaintiff's establishment of a *prima facie* case.

**B. Defendant's Legitimate Nondiscriminatory Reason**

Defendant asserts that Plaintiff was not selected for the HSI program director position because Dr. Snowden and Mr. Martinelli sought to alter the position to include additional responsibilities and require familiarity of additional subject matter. (*See* ECF No. 23-5, at 45). Dr. Snowden and Mr. Martinelli aver that expanding HSI into HSSI made sense in light of the growing healthcare field and in order to "attract additional expertise to work in both [the health and human services] areas." (ECF No. 23-6, at 25; *see* ECF No. 23-5, at 45). As the Fourth Circuit has noted, "[d]uty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with the authority to strip employers of their basic business responsibilities." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). Thus, when an employer puts forth a legitimate, nondiscriminatory basis for an action, a court may not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000). Accordingly, Defendant has met its burden of production

of articulating a legitimate, nondiscriminatory reason for Plaintiff's non-selection.

### C. Pretext

Plaintiff attempts to show that Defendant's reason for her non-selection is pretext for discrimination. To establish pretext, a plaintiff "has to prove '*both* that the reason was false, *and* that discrimination was the real reason.'" *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (emphases in original) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)); *see Reeves*, 530 U.S. at 143, 147. "Plaintiff may prove that the defendant's proffered reasons are unworthy of credence 'by showing that they had no basis in fact, they did not in fact motivate the [non-selection] or, if they were factors in the decision, they were jointly insufficient to motivate the [non-selection].'" *Agelli*, 2014 WL 347630 at *8 (quoting *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995)).

Plaintiff contends that Defendant's reason is pretextual for the following reasons: Defendant cancelled the third recruitment because Plaintiff was selected; Mr. Martinelli, not Dr. Snowden, made the decision to cancel the third recruitment; and Defendant had no prior plan to expand HSI into HSSI and did not actually follow through with the expansion. (ECF No. 26, at

13

40-50).[4]  In addition to countering Plaintiff's arguments, Defendant also notes that a survey of its promotion practices shows a lack of discriminatory animus.

Plaintiff's assertions that Defendant's decision was pretextual are unpersuasive.  Every employee stated that the third recruitment was cancelled because of the desire to expand HSI into HSSI and modify the position description due to the changing healthcare environment and evolving needs of the department.  (*See, e.g.*, ECF Nos. 23-5, at 17; 23-9, at 12; 26-4, at 32).  Furthermore, Dr. Snowden had just been named dean of WDCE and wanted to modify the department's structure.  In her deposition, Dr. Snowden avers that she continues unsuccessfully to request funding for HSSI, showing that her desire to expand the department was, and continues to be, legitimate.  (ECF No. 23-5, at 55-56).  In addition, the fact that Mr. Martinelli was involved in the decision to cancel the third recruitment is of little relevance.  Plaintiff appears to be attempting to pin the decision on Mr. Martinelli because he is outside of Plaintiff's protected class.  The record indicates, however, that Mr. Martinelli and Dr. Snowden, who is African-American, both played a role in the decisionmaking process.  Perhaps more importantly,

---

[4] Much of Plaintiff's response is devoted to the first recruitment.  While such a discussion provides context, the first recruitment itself is time-barred, as discussed above.

Mr. Martinelli approved Plaintiff for another promotion in 2011. In a similar situation, the Fourth Circuit explained:

> [T]he employee was hired and fired by the same person within a relatively short time span . . . this fact creates a strong inference that the employer's stated reason for acting against the employee is not pretextual. . . . In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.

*Jiminez*, 57 F.3d at 378 (omissions in original) (internal quotation marks omitted) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)). Defendant also notes that several African-American employees were promoted within WDCE to positions at the same level or higher than the one sought by Plaintiff. (ECF No. 23-1, at 23).[5]

Plaintiff "cannot rely on [her] 'own assertions of discrimination[, which] in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" *Adams*, 640 F.3d at 560 (alteration in original) (quoting *Williams v. Cerberonics*,

---

[5] Plaintiff's attempt to show that Caucasian comparators were promoted when she was not is unavailing. The Caucasian employees were not similarly situated because they were promoted to different jobs than the one sought by Plaintiff. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272-73 (4th Cir. 2005) (holding that a plaintiff failed to show pretext by pointing to purported comparators because "the job requirements and responsibilities for the white employees [were] different" than those for the plaintiff). Plaintiff's argument also ignores the many African-American employees who were promoted to similar positions within WDCE.

*Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)). Unlike in *Westmoreland*, 876 F.Supp.2d at 608-10, Plaintiff has put forth no evidence showing that Defendant's reason was false or was actually pretext for discrimination. *See Agelli*, 2014 WL 347630 at *8 (holding that the plaintiff failed to show pretext because "the record contradicts Plaintiff's broad assertions, which fail to show that Defendant's [proffered] legitimate nondiscriminatory reasons for its hiring decisions are pretextual"). In short, Plaintiff has failed to show that Defendant was motivated by any unlawful discriminatory animus whatsoever. Accordingly, Defendant is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to file a suprreply and Defendant's motion for summary judgment will both be granted. A separate order will follow.

                                                  /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge